UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERINA M. CALLOWAY,

    Plaintiff,

v.

MICHIGAN EDUCATION
ASSOCIATION, et al.,

    Defendants.

_____/

Case No. 1:24-cv-1325

Hon. Hala Y. Jarbou

## OPINION

Terina Calloway was a bus driver for the Dowagiac Union Schools before she was fired in February 2024. Calloway sued her union, the Michigan Education Association (MEA), and two union officials, Roy Freeman and Lou Vidmar, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(c), for their alleged refusal to challenge the school district's disciplining Calloway and other people of color more harshly than white bus drivers for safety infractions. Defendants now move to dismiss the lawsuit on the grounds that Freeman and Vidmar cannot be personally liable to Calloway under Title VII and that Calloway did not plausibly allege that any Defendant discriminated against her. (Mot. to Dismiss, ECF No. 26.) For the reasons stated herein, the Court will grant Defendants' motion.

### I.    BACKGROUND

Calloway was hired as a bus driver for the Dowagiac Union Schools in 2016. (Am. Compl. ¶ 1, ECF No. 23.) In 2022, she began having problems at work that she felt were rooted in racial animus. (*Id.* ¶ 4.) Calloway was concerned by the union's handling of an accident caused by Benjamin Hoops, a fellow school-bus driver who was white. (*See id.* ¶ 5.) Hoops crashed into

another car after running a stop sign, resulting in a third bus driver who was accompanying Hoops sustaining injuries. The driver, who was black, sought to return to work after his convalescence but was stymied; Calloway attempted to enlist the union on his behalf but was rebuffed by Freeman, who claimed that his hands were tied. She was similarly perturbed by what she perceived as differential treatment on the school district's part toward alleged safety violations by her and another colleague who was white, Louanna Robinson. (*Id.* ¶ 8.) Near the end of 2023, Calloway sued her employer for racial discrimination and retaliation under Title VII, but this Court dismissed the complaint for failing to state a claim.[1] In January, Calloway was suspended after fueling her bus on a cold day while students were still aboard. (*Id.* ¶ 11.) During a meeting in early February, Calloway was informed that the district superintendent wanted her to resign. (*Id.* ¶ 13.) When she attempted to bring up the allegedly differential treatment to which she was subjected relative to her white colleagues, Calloway alleges that Freeman and Vidmar clamped down on her objection and subsequently exerted pressure on her to sign a resignation agreement. (*Id.* ¶¶ 14–16.) Calloway refused to do so, so she was fired. (*Id.* ¶¶ 15, 17.)

Calloway submitted a complaint to the Equal Employment Opportunity Commission shortly after her termination naming all three Defendants. (Resp. to Mot. to Dismiss 5, ECF No. 29.) Calloway received a right-to-sue letter from the agency shortly thereafter, then initiated the instant suit within the ninety-day window specified by Title VII, *see* 42 U.S.C. § 2000e-5(f)(1). Calloway filed an amended complaint in mid-May, which Defendants promptly moved to dismiss.

---

[1] *Calloway v. Dowagiac Union Schs.*, No. 1:23-cv-1299, 2023 WL 9327198 (W.D. Mich. Dec. 29, 2023), *adopted*, 2024 WL 230866 (W.D. Mich. Jan. 22, 2024).

## II.    LEGAL STANDARD

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when the plaintiff fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id*. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

## III.    ANALYSIS

### A.    Proper Title VII Defendants

At the threshold, Defendants argue that they are not proper parties to this suit because they are not Calloway's employers.  This argument is not dispositive when it comes to the MEA, for it is settled law in this circuit that unions are proper defendants under Title VII, which explicitly proscribes discrimination in union membership and representation. *Peeples v. City of Detroit*, 891 F.3d 622 (6th Cir. 2018), repudiated the view, expressed in earlier Sixth Circuit decisions, that unions could only be sued for failing to fairly represent their members through a "hybrid" action under section 301 of the Taft-Hartley Act, *see* 29 U.S.C. § 185(a).  Calloway is alleging that the

3

MEA discriminated against her because of her race, so she can indisputably sue the union under Title VII.

However, Freeman and Vidmar are not proper defendants. The weight of the case law holds that individual union officers cannot be liable for discriminatory conduct under Title VII, which only prohibits discrimination by "labor organizations" and not their employees. Just as an employee can only sue the employer they work for and not the manager who directly supervises them, *see Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404–5 (6th Cir. 1997), a union member can only sue the union to which they belong and not a local representative or shop steward, *see, e.g.*, *Slater v. Susquehanna County*, 613 F. Supp. 2d 653, 662 (M.D. Pa. 2009), *aff'd*, 465 F. App'x 132 (3d Cir. 2012); *Lugo v. IBEW Loc. 134*, 175 F. Supp. 3d 1026, 1033 (N.D. Ill. 2016); *Leake v. Kroger*, No. 2:23-cv-2388, 2024 WL 3040039, at *4 (W.D. Tenn. May 30, 2024), *adopted*, 2024 WL 3029521 (W.D. Tenn. June 17, 2024); *Gaston v. Cuyahoga Cmty. Coll. Chapter*, No. 1:23-cv-850, 2024 WL 167092, at *5 (N.D. Ohio Jan. 16, 2024); *cf. Burrell v. Henderson*, 483 F. Supp. 2d 595, 600 (S.D. Ohio 2007) (union official not liable under Age Discrimination in Employment Act because not liable under Title VII). As MEA agents, Freeman's and Vidmar's conduct may be relevant to whether the MEA discriminated against Calloway, but they cannot be personally liable to Calloway for that conduct.[2]

### B.    Title VII Claims Against Unions

Calloway (who is not represented by counsel) does not point to a specific provision of Title VII in her complaint or her opposition to the motion to dismiss that she contends Defendants have violated. The most plausible candidates are 42 U.S.C. §§ 2000e-2(c) and 2000e-3(a). Subsection

---

[2] Given this disposition, the Court does not reach the issue of whether Calloway exhausted her administrative remedies against Freeman and Vidar by naming them in her EEOC charge (Mot. 5).

4

2000e-2(c), entitled "Labor organization practices," makes it unlawful for unions to engage in three specified acts. *First*, a union may not "exclude or . . . expel from its membership, or otherwise . . . discriminate against, any individual." 42 U.S.C. § 2000e-2(c)(1). *Second*, a union may not "deprive any individual of employment opportunities," nor may it limit those opportunities by segregating its membership based on protected characteristics or by not referring members for work because of a protected characteristic. *Id.* § 2000e-2(c)(2). And *third*, a union may not "cause an employer to discriminate against an individual." *Id.* § 2000e-2(c)(3). Subsection 2000e-3(a) is, by contrast, a retaliation provision: it proscribes discrimination against any member of or applicant to a union for the person's opposing an "unlawful employment practice" or for involvement in a Title VII dispute.

Courts have sometimes paid insufficient heed to the text of subsections 2000e-2(c) and 2000e-3(a) when adjudicating claims against labor unions. It is not unusual for cases to recite the elements of a prima facie case against an employer, which requires that the plaintiff show that the terms and conditions of their employment were worsened, in union cases, even though unions typically do not directly control the terms and conditions of an individual member's employment. *See, e.g.*, *Jackson v. AFSCME Mich. Council 25, Loc. 1603*, No. 17-10671, 2019 WL 1399987, at *5 (E.D. Mich. Mar. 28, 2019); *Stewart v. Theatrical Stage Emps. Union Loc. No. 2*, 211 F. Supp. 3d 1094, 1105 (N.D. Ill. 2016); *Stahly v. Amalgamated Transit Union, Loc. 996*, 3 F. Supp. 3d 720, 729 (N.D. Ind. 2014). *But cf. Phillips v. UAW Int'l*, 149 F. Supp. 3d 790, 802 (E.D. Mich. 2016) (finding that unions cannot be held liable as unions for creating hostile work environment), *aff'd on other grounds*, 854 F.3d 323 (6th Cir. 2017) (noting inconsistency of district court's interpretation of subsection 2000e-2(c) with Eighth Circuit precedent).

5

The importation of this formula from employer cases rests on the assumption that the grounds for holding unions and employers liable do not materially differ, notwithstanding the evident differences between the statutory language appropriate to each kind of entity. The employer provision sets out an expansive prohibition on discrimination against an employee in the "compensation, terms, conditions, or privileges" of their employment because they possess a protected characteristic. 42 U.S.C. § 2000e-2(a)(1). The parallel union provision, by contrast, does not append similarly capacious language encompassing the main features of union membership, such as representation of the employee in disputes with the employer. The absence of those specific examples of discrimination at least suggests that the catchall prohibition on discrimination in subsection (c)(1) ("otherwise discriminate") should be limited to discrimination in some manner akin to "exclud[ing]" or "expel[ling]" someone from union membership. *See* Garner & Scalia, Reading Law 199 (2012) (defining *ejusdem generis* canon).

If this statutory language existed in a vacuum, it would be a close question whether to adopt the narrow construction just discussed. But subsection (c)(1) has been glossed by the Supreme Court in a case parallel to this one. In *Goodman v. Lukens Steel Co.*, 482 U.S. 656 (1987), the plaintiffs brought Title VII claims against the United Steelworkers of America and two locals to which the plaintiffs belonged for not pursuing the plaintiffs' grievances against their employer, which discriminated against black employees. The Court, construing subsection (c)(1), found the union's practice prohibited by the "plain language of the statute." *Id.* at 667. Thus, the "discrimination" prohibited by subsection (c)(1) covers, at the very least, a union's rejection of "disparate-treatment grievances presented by blacks" against an employer "solely because the claims assert racial bias and would be very troublesome to process." *Id.* at 669; *see also Hubbell v. World Kitchen, LLC* (*Hubble II*), 717 F. Supp. 2d 494, 502 (W.D. Pa. 2010) ("[W]here an

6

aggrieved employee affirmatively requests union intervention to remedy an act of discrimination committed by his or her employer, a deliberate refusal or failure to act on that request may subject the union to liability under Title VII.").

That claim is essentially what Calloway raises in her complaint. Calloway alleges that in 2022 Dowagiac Union Schools began treating violations of safety rules by her and other people of color more harshly than violations by their white colleagues. (Am. Compl. ¶ 4.) She accuses the MEA of discriminating by not opposing the school district's discriminatory acts. For instance, she accuses the union of not helping a black bus driver harmed in a serious accident—one allegedly caused by white bus driver Benjamin Hoops—who was thereafter unable to return to work. (*Id.* ¶ 5.) She also points to the union's unwillingness to protest the termination of a substitute bus driver who accused Louanna Robinson of driving into a hanging power line (*id.* ¶¶ 6–7), and the union's later denying that Robinson was at fault when she drove her bus into a ditch while students were aboard (*id.* ¶ 8). Finally, Calloway points to the union's failure to defend her when the school district elected to fire her for safety violations, including when she fueled her bus with students on board a few weeks before her termination. (*Id.* ¶¶ 11, 13.) Calloway emphasizes Freeman and Vidmar's alleged squelching of her contention that she was being treated more harshly than Hoops as evidence of the union's indifference to the school district's racist application of the safety rules. (*Id.* ¶ 14.) Taken together, these allegations are comfortably within the scope of subsection (c)(1) as construed by the Supreme Court. That conclusion necessitates rejection of Defendants' argument that they can only be liable if they caused Dowagiac Union Schools to fire her (Mot. 5–6)—the same position adopted by the union defendant in *Goodman* and rejected by the Supreme Court.

What remains is to determine whether Calloway states a claim against the union, which entails returning to the task of identifying the elements of a Title VII claim against a labor organization. To survive a motion to dismiss, the Title VII plaintiff need only allege facts supporting a "plausible inference of intentional discrimination." *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012). Although the Court is unaware of a precedent defining the facts that can give rise to that plausible inference in the union context, the Court finds persuasive the showing mandated by the District of Maryland in *Murphy v. Smith*: the allegations must permit the conclusion that the plaintiff "had a meritorious claim of discrimination," that they "affirmatively requested that [their] union intervene to remedy the alleged discrimination," and that the union "deliberately refused or failed to act on that request for discriminatory reasons." No. Civ. A. 12-1975, 2014 WL 3845804, at *12 (D. Md. Aug. 4, 2014).

The test set out by *Murphy* implies that a union does not become liable for failing to raise an employee's grievance against an employer anytime the employer is accused of acting in a discriminatory manner. The union must have "declined to proceed with the grievance process *because* it was based on an underlying claim of discrimination," *Hubbell v. World Kitchen, LLC* (*Hubble I*), 688 F. Supp. 2d 401, 434–35 (W.D. Pa. 2010) (emphasis added), out of its indifference to the unfair treatment of members with protected characteristics or its privileging the interests of members without them. *Cf. Motley v. IAMAW Dist. Lodge 141*, 768 F. App'x 570, 573 (7th Cir. 2019) ("To stave off summary judgment, Motley needed to present evidence from which it could be inferred that the union refused to arbitrate his grievance *because of* his race."). The union member must therefore allege the racial considerations that cankered the union's decision to state a plausible Title VII claim.

8

Calloway's complaint fails to satisfy these requirements. It lacks facts from which it can be inferred that the MEA did not take up Calloway's accusation that her firing was racially motivated for MEA's own discriminatory reasons. There is no explicit allegation that the MEA or its officers were biased against bus drivers who are persons of color. Nor does Calloway contend that the union ignored accusations of discrimination against the Dowagiac Union Schools while safeguarding the interests of white union members. From what appears in the complaint, it is not apparent whether the MEA's unwillingness to contest Calloway's termination was peculiar to her and other nonwhite bus drivers or if the union was just as inert when the jobs of white bus drivers were on the line. And the core incident Calloway points to as proving that her termination was unjust—that fellow bus driver Louanna Robinson was not punished for her alleged safety violations when Calloway was—cannot be laid at the feet of the union. Since the school adjudged Robinson innocent of misconduct after the accident she was involved in, there was no opportunity for the union to defend Robinson, let alone defend her more vigorously than Calloway.

Finally, Calloway does not plausibly allege that her own firing was racially discriminatory, which would permit the inference that the MEA's acquiescence in that firing was discriminatory too. Other courts have treated the absence of allegations that a plaintiff is similar in all important respects to those treated more favorably as grounds for dismissing a Title VII action. *See, e.g.*, *Meka v. Dayco Prods. LLC*, 742 F. Supp. 3d 769, 774–75 (E.D. Mich. 2024). A plaintiff states "a plausible claim by detailing a specific event" involving their being "treated differently" than their "counterparts" who do not belong to the plaintiff's protected class. *Savel v. MetroHealth Sys.*, 96 F.4th 932, 944 (6th Cir. 2024) (cleaned up) (quoting *Keys*, 684 F.3d at 610). The only basis Calloway provides for believing that her firing was racially discriminatory is that she was fired for violating rules when white bus drivers were not. (*Id.* ¶¶ 4, 18.) The complaint notes that the

termination letter Dowagiac Union Schools sent to Calloway cited thirteen[3] examples of Calloway's violating school-district transportation policies, the collective-bargaining agreement between the school district and the union, and state law. (Am. Compl. ¶ 17.) But it nowhere suggests that any of the white school-bus drivers who were disciplined less harshly than Calloway had a comparable record of rule violations. The complaint notes one safety incident involving Benjamin Hoops (*id.* ¶ 5) and two involving Robinson (*id.* ¶ 6–8); how those drivers' conduct can be regarded as comparably serious to Calloway's is unexplained in the complaint and Calloway's opposition brief. (*See* Resp. 4–5.) Simply put, the Court cannot infer from Calloway's allegations that she was similarly situated to white bus drivers who were investigated after safety incidents and cleared of responsibility, because Calloway cannot point to any driver who amassed as many violations as she did who was not fired by the school district.

Calloway's failure to allege that the school district fired her for racial reasons excludes the last possible basis for the supposition that the MEA's response to Calloway's firing was equally discriminatory. The Court finds that Calloway's complaint does not state a plausible claim for relief. Dismissal of Calloway's action is therefore warranted.

An order consistent with this Opinion shall issue.

Dated: November 4, 2025                     /s/ Hala Y. Jarbou
                                            HALA Y. JARBOU
                                            CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Defendants attached the termination letter as an exhibit to their motion to dismiss; contrary to Calloway's allegation, the letter only references twelve reasons for her firing. The Court may consider the termination letter in passing on the motion to dismiss without impropriety because it was "referred to in the pleadings" and is "integral to the claims." *Moyer v. Gov't Emps. Ins. Co.*, 114 F.4th 563, 568 (6th Cir. 2024) (cleaned up).